UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X

THE KATIROLL COMPANY, INC.,

                **Plaintiff,**

    - against -

KATI JUNCTION, INC., JOHN DOE #1,
Md. AKHTER HOSSAIN, Md. JEWEL
HOSSAIN, Md. KAMAL HOSSAIN, Md.
TARIQUL ISLAM, Md. NUR NOBI,
SHAIKH NUHUL ALAM, and NURUN
NABI CHOWDHURY,

                **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**14-cv-1750 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

        Plaintiff, The KatiRoll Company, Inc. ("TKRC"), brings this action

against Kati Junction, Inc. and eight of its employees.[1] TKRC asserts eight causes

of action: (1) infringement of a federally registered service mark against Kati

Junction and the John Doe defendant; (2) trade dress infringement against all

defendants; (3) unfair competition under the Lanham Act against all defendants;

---

[1]    The Complaint ("Compl.") alleges that "[j]urisdiction is conferred by
15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367." Compl. ¶ 13.

(4) state statutory infringement and unfair competition against all defendants; (5) common law unfair competition against all defendants; (6) breach of duty of loyalty against employee defendants; (7) breach of contract against defendants Islam and Alam; and (8) misappropriation of trade secret and/or proprietary and confidential information against all defendants.  Defendants move to dismiss counts two through eight of the Complaint.  For the reasons that follow, defendants' motion is DENIED.

## II.   BACKGROUND

### A.   The KatiRoll Company, Inc.

TKRC is a carry-out style restaurant that first opened in June 2002 on MacDougal Street in Manhattan.[2]  TKRC primarily sells Indian food, using flatbread (paratha or roti) prepared on a griddle and then wrapped around one or more fillings such as kebab meats, eggs, cheese, or vegetables.[3]  Since TKRC first opened in 2002, it has used a "2-for" discount when a customer purchases two of the same item.[4]

There are currently four TKRC restaurants, three in Manhattan and

---

[2]   *See id.* ¶ 16.

[3]   *See id.* ¶ 21.

[4]   *See id.* ¶ 31.

one in London, England.[5]  Each of the restaurants uses orange and white signage, has an orange awning with the company's word mark in white lettering and an orange banner with the company's word mark in white lettering.[6]  The layout of each TKRC restaurant features an open glass front with unobstructed windows, limited seating in front with a counter further back and an open kitchen plan to enhance the customer experience by allowing customers to observe preparation of the food.[7]  The stores use wood facing on the counters and wood surrounds on the trash bins.[8]

It took many months for TKRC to develop the recipes for each of its dishes as well as the proprietary processes used to create desired textures and to keep ingredients ready for use without artificial preservatives.[9]  Additionally, the company spent approximately six months perfecting its roti recipe before introducing it in the restaurant.[10]  Employees were told to keep the recipes secret as

---

[5]      *See id.* ¶ 16.

[6]      *See id.* ¶ 19.

[7]      *See id.* ¶¶ 23, 26.

[8]      *See id.* ¶ 32.

[9]      *See id.* ¶¶ 37, 40.

[10]      *See id.* ¶ 39.

3

part of their job training and in the employee manual.[11]  Employees also signed

non-disclosure agreements.[12]

TKRC employees wear a uniform that includes a t-shirt with the

company mark, a hat, and an apron.[13]  The company name and design trademarks

appear on the back of the shirt to ensure they are not obstructed by the apron.[14]

### B.    Kati Junction, Inc.

In February 2014, Kati Junction, Inc. opened a takeout-style restaurant

called Kati Junction at 200 West 40th Street in Manhattan, approximately three

blocks from a TKRC restaurant.[15]  Kati Junction uses orange and white signage.[16]

Kati Junction's menu is nearly identical to TKRC's, including the names of the

menu items and descriptions of those items.[17]  Kati Junction sells the same menu

items as the TKRC restaurants and does not offer any additional or different rolls

from the TKRC menu—Kati Junction also offers a "2-for" discount when a

---

[11]    *See id.* ¶ 41.

[12]    *See id.*

[13]    *See id.* ¶ 28.

[14]    *See id.*

[15]    *See id.* ¶¶ 3, 17.

[16]    *See id.* ¶ 20.

[17]    *See id.* ¶ 22.

customer purchases two of the same item.[18]   The flavor profile and texture of Kati Junction's fillings, sauces, and breads are very similar to TKRC's.[19]

Kati Junction's restaurant features an unobstructed open glass front, limited seating in front with a counter further back, an open kitchen plan, and uses wood facing on the counters and wood surrounds for trash bins.[20]  Employees wear a uniform that includes a t-shirt with the Kati Junction orange and white design on the back, a hat, and an apron.[21]

Kati Junction hired seven "current and former" TKRC employees.[22] These employees are allegedly using TKRC's proprietary recipes and techniques to copy the TKRC menu.[23]  Since Kati Junction opened, more than one customer has asked TKRC about its new branch, demonstrating that customers are confused and believe Kati Junction is a TKRC restaurant.[24]

## III.   LEGAL STANDARD

---

[18]     *See id.* ¶¶ 22, 31.

[19]     *See id.* ¶ 44.

[20]     *See id.* ¶¶ 24, 33.

[21]     *See id.* ¶ 29.

[22]     *See id.* ¶ 43.

[23]     *See id.* ¶¶ 45, 46.

[24]     *See id.* ¶ 36.

A.      **Motion to Dismiss**

In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[25]  The court evaluates the complaint under the "two-pronged approach" set forth in *Ashcroft v. Iqbal*.[26]  *First*, a court may "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[27]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[28]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[29]

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[25]      *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007)).

[26]      *See* 556 U.S. 662, 679 (2009).

[27]      *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678), *cert. denied*, 133 S. Ct. 952 (U.S. 2013).

[28]      *Id.*

[29]      *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).

for the misconduct alleged."[30]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[31]

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[32]  "[T]he court generally cannot consider affidavits and exhibits on a motion to dismiss."[33]  Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[34]

## B.    Pleading Requirements

### 1.    Rule 8

---

[30]    *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[31]    *Id.*

[32]    *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (citing *In re Citibank ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (quotation marks omitted)).

[33]    *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 216 (S.D.N.Y. 2010).

[34]    *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n.1 (2d Cir. 2013) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)), *cert. denied*, 134 S. Ct. 241 (2013).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[35]  To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet the plausibility standard, as discussed above.[36]

## IV.   APPLICABLE LAW

### A.   Lanham Act Claims

#### 1.   Trade Dress Infringement

Pursuant to section 1125(a) of Title 15 of the United States Code, a cause of action for trade dress infringement may be sustained under the Lanham Act.[37]  Section 43(a) of the Lanham Act provides:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [ ] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person [ ] shall be liable in a civil action by any person who believes he or

---

[35]   *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)).

[36]   *See id.* at 678 (citing *Twombly*, 550 U.S. at 570).

[37]   *See TrafFix Devices, Inc., v. Marketing Displays, Inc.*, 532 U.S. 23, 28–29 (2001).

she is or is likely to be damaged by such act.[38]
In *Two Pesos v. Taco Cabana* , the Supreme Court held that "[t]rade dress is the total image of the business" and "may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniforms and other features reflecting the total image of the restaurant."[39]  The purpose of trade dress protection is to "secure to the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."[40]

A plaintiff must prove "that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's goods and the defendant's."[41]  "A plaintiff must also offer a precise expression of the character and scope of the claimed trade dress,"[42] and articulate the "elements of . . . design with specificity to

---

[38]     15 U.S.C. § 1125(a)(1)(A).

[39]     505 U.S. 763, 764 n. 1 (1992).

[40]     *Id.* at 774 (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985)).

[41]     *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. App'x 389, 391 (2d Cir. 2003) (citation omitted).

[42]     *Id.* (quotation marks and citation omitted).

9

be afforded trade dress protection."[43]

The Second Circuit cautions that in analyzing trade dress claims, "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin."[44]  Trade dress "analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free competition."[45]

In assessing the likelihood of customer confusion "[t]he Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another."[46]  The relevant confusion is "that which affects the purchasing and selling of the goods or services in question."[47]  Thus, "trademark infringement protects only against mistaken purchasing decisions and not against

---

[43]     *Shevy Custom Wigs, Inc. v. Aggie Wigs.*, No. 06 Civ. 1657, 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006).

[44]     *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 375 (2d Cir. 1997).

[45]     *Id.* at 377, 380.  *Accord ID7D Co. v. Sears Holding Corp.*, No. 11 Civ. 1054, 2012 WL 1247329, at *6 (D. Conn. Apr. 13, 2012).

[46]     *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 582 (2d Cir. 1991) (quotation marks omitted).

[47]     *Id.* at 583.

confusion generally."[48]

## 2.    Unfair Competition

At its core, an unfair competition claim under the Lanham Act examines "whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff."[49] The Lanham Act, section 1125(a) of Title 15 of the United States Code, prohibits any misrepresentation likely to cause confusion about the source of a product, in particular the use by any person of "any . . . name . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association . . . with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."[50]

---

[48]    *Id.* (quoting Restatement (First) of Torts § 20 (1934) reporter's note at 179).

[49]    *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981) (citations and quotation marks omitted).

[50]    *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 Civ. 4187, 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013) (quoting 15 U.S.C. § 1125(a)) ("[T]he standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114).").  *Accord Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002); *Estate of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("A party establishes liability under [15 U.S.C. § 1125(a)] if it can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion.") (citations and

11

### 3.       Liability of Individual Defendants

It is well-established in the Second Circuit that "under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious force behind [the defendant corporation's] infringement."[51]   A showing that an officer "authorized and approved the acts of unfair competition which are the basis of [the] . . . corporation's liability . . . is sufficient participation in the wrongful acts to make [the officer] individually liable."[52]   Furthermore, "in determining whether the officer's acts render him individually liable, it is immaterial whether . . . he knows that his acts will result in an infringement."[53]

### B.     Common Law Claims

### 1.       Trademark Infringement

"'It is well-established that the elements necessary to prevail on

---

quotation marks omitted).

[51]     *Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007).  *Accord Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (holding liable individual defendants who were directly involved in the purchase, approval and resale of infringing products) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)).

[52]     *Bambu Sales, Inc.*, 683 F. Supp. at 913–14.

[53]     *Id.* at 913.

causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims.'"[54]

### 2.    Unfair Competition

The essence of the tort of unfair competition under New York common law is the bad-faith misappropriation, for the commercial advantage of one person, of "a benefit or 'property' right belonging to another [person]."[55]  As noted above, the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law "mirror the Lanham Act claims."[56]  However, unlike its federal counterpart, a viable common

---

[54]    *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 Civ. 4204, 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013) (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005)).  *Accord Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982) ("The heart of a successful claim based upon [both] . . . the Lanham Act . . . and [the] common law [causes of action] . . . is the showing of a likelihood of confusion as to the source or sponsorship of defendant's products.").

[55]    *Volmar Distribs. v. New York Post Co.*, 899 F. Supp. 1187, 1197 (S.D.N.Y. 1995) (quoting *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Co.*, 101 N.Y.S.2d 483, 489 (Sup. Ct. N.Y. Co. 1950), *aff'd*, 107 N.Y.S.2d 795 (1st Dep't 1951) (quotations omitted).  *Accord Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (noting that the essence of New York's unfair competition law "is that the defendant has misappropriated the labors and expenditure of another").

[56]    *Allied Interstate*, 2013 WL 4245987 at *5.  *Accord Standard & Poor's*, 683 F.2d at 708.

law claim for unfair competition requires an additional showing of bad faith.[57] "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will [sic] and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."[58]

## C.    Breach of Duty of Loyalty

"New York law with respect to disloyal or faithless performances of employment duties is grounded in the law of agency, and has developed for well over a century."[59]  That is, the duty of loyalty means an agent is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."[60] Under New York law, however, duty of loyalty claims are "'limited to cases where the employee, acting as the agent of the employer, diverts business opportunities to

---

[57]    *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000) ("To determine that misappropriation has occurred, bad faith must be found . . . .") (citations omitted); *see also Saratoga Vichy Spring*, 625 F.2d at 1037 (noting that central to the "notion" of unfair competition under New York law is "some element of bad faith").

[58]    *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 388 (2d Cir. 2005).

[59]    *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003).

[60]    *Id.* (citation omitted).

14

himself or others to the financial detriment of the employer, or accepts improper kickbacks.'"[61]

### D.   Breach of Contract

To establish a claim for breach of contract under New York law, a party must prove "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."[62]  In determining a party's obligations under a contract, it is not for the court to "supply a specific obligation the parties themselves did not spell out."[63]  "The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint."[64]

### E.   Misappropriation of Trade Secret and/or Proprietary and Confidential Information

New York's unfair competition law recognizes a cause of action for

---

[61]    *Farricker v. Penson Dev., Inc.*, No. 07 Civ. 11191, 2010 WL 845983, at *10 (S.D.N.Y. Mar. 4, 2010) (quoting *Veritas Capital Mgmt. LLC v. Campbell*, 875 N.Y.S.2d 824, 10 (Sup. Ct. N.Y. Co. 2008)).  *Accord Fada Int'l Corp. v. Cheung*, 870 N.Y.S.2d 23, 24 (1st Dep't 2008) (upholding the dismissal of plaintiff's duty of loyalty claim "since there is no claim that defendants used plaintiff's time, facilities or proprietary secrets in setting up their new business").

[62]    *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).

[63]    *Tonking v. Port Auth. of New York & New Jersey*, 3 N.Y.3d 486, 490 (2004).

[64]    *Id.*

misappropriation—"taking the skill, expenditures and labors of a competitor, and misappropriati(ng) for the commercial advantage of one person . . . a benefit or property right belonging to another."[65]  The tort of misappropriation is "adaptable and capacious," and has been held to encompass "any form of commercial immorality," of "endeavoring to reap where one has not sown."[66]  As an unfair competition claim, misappropriation requires a showing of bad faith.[67]

To state a claim for misappropriation of trade secrets under New York law, a plaintiff must demonstrate "'(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'"[68]  A trade secret is "'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over

---

[65]     *Roy Exp. Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (citations and quotation marks omitted).

[66]     *Id.*

[67]     *See Ritani, LLC v. Aghjayan*, No. 11 Civ. 8928, 2013 WL 4856160, at *22 (S.D.N.Y. Sept.  9, 2013).

[68]     *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quoting *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)).

competitors who do not know or use it.'"[69]

## V.     DISCUSSION

### A.     Trade Dress Infringement Against Kati Junction

Defendant argues that dismissal of the trade dress infringement claim is warranted because the Complaint fails to specifically plead the elements of TKRC's alleged trade dress.  Kati Junction contends that the generic food items, colors, and signs in both its restaurant and TKRC's are too typical of fast food restaurants to provide a basis for a distinctive trade dress.

TKRC does plead specific elements comprising its trade dress including (1) TKRC's orange and white signage and color scheme, (2) the layout of its restaurants, including an unobstructed open glass window, limited seating in front with the counter further back and an open kitchen plan, (3) menu items and pricing, (4) employee uniforms with the company mark on the back of the shirt, and (5) the unique food items sold.[70]  TKRC further alleges it is the first fast food restaurant to sell kati rolls in the United States.[71]  Following *Two Pesos*, the

---

[69]      *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b, at 5 (1939)).

[70]      *See* The KatiRoll Company Inc.'s Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss at 6.

[71]      *See id.* at 2.

combination of these elements may comprise a restaurant's trade dress.[72]  In 2011, a court in the District of New Jersey found that TKRC's trade dress was non-functional and likely to have acquired secondary meaning.[73]

The Complaint alleges customer confusion by asserting that more than one customer has asked TKRC about its new location.[74]  On a motion to dismiss, such allegations are sufficient to show that customers are drawing a link between the two restaurants in their minds and there is a serious possibility of confusion. To dismiss the trade dress claim at this stage would be premature.  Thus the motion

---

[72]   *See Two Pesos*, 505 U.S. at 764 n. 1.

[73]   *See Katiroll Co. Inc. v. Kati Roll & Platters, Inc.*, No. 10 Civ. 3620, 2011 WL 346502, at *8-9 (D.N.J. Feb. 1, 2011) ("[T]he non-functional aspects . . . are the orange and white color schemes, the exposed and unpainted red brick walls, the brown tile on the floor, and a large window-front that can be[] seen through from the street . . . the signs of each are similar albeit with a different font and layout but with each designed with white lettering and an orange background. . . . evidence also shows that Plaintiff's restaurants' kitchens are "open."  These elements are "non-functional," . . . Finally, the restaurants both sell katirolls [sic], an Indian fast food, and they both operate in the "fast-food" style . . . Regarding whether the design has acquired secondary meaning, the Court concludes that Plaintiff has established a substantial likelihood on the merits that it has . . . .").

[74]   These inquiries, standing alone, may not be sufficient to establish consumer confusion as understood under the Lanham Act.  More evidence will likely be needed to determine whether customers have purchased food at Kati Junction under the mistaken belief it was a TKRC product.  Direct evidence may be gathered through customer surveys and additional indirect evidence may be gleaned from observational studies, online media, and anecdotes.  *See Kind LLC v. Clif Bar & Co.*, No. 14 Civ. 770, 2014 WL 2619817, at *8-11 (S.D.N.Y. Jun. 12, 2014).

18

to dismiss this claim is DENIED.

### B. Trade Dress Infringement and Unfair Competition Against Individual Employees

Kati Junction moves to dismiss the trade dress infringement and unfair competition claims under the Lanham Act and New York State statutory laws for failure to plead infringing activity by the named employees. Kati Junction correctly notes that for an individual to be held personally liable for a corporation's acts of infringement, he or she must be the "moving, active[,] conscious force" behind the infringement.[75] Relying on the individual employees' affidavits, Kati Junction contends the employee defendants were hired after Kati Junction opened for business and are low-level employees who perform their tasks under the supervision and control of Kati Junction's management.[76] The attestations made in the affidavits, however, may not be considered in a motion to dismiss and only the facts alleged in the Complaint may be considered.

Kati Junction further argues that under New York State law, owners, officers, directors, or operators of a corporation cannot be held individually liable for torts committed by the corporation absent individual acts outside the scope of

---

[75]     *Cartier*, 512 F. Supp. 2d at 170.

[76]     *See* Defendants' Memorandum of Law in Support of Their Partial Motion to Dismiss Plaintiff's Complaint at 14.

their corporate role.  The Complaint does not allege this sort of vicarious liability. Rather, TKRC alleges that the individuals personally engaged in infringing acts.

TKRC alleges that the John Doe defendant directs the activities of Kati Junction and Md. Akhter Hossain was a manager who received training on trade secret and proprietary TKRC information.[77]  Further, because all employee defendants worked at TKRC the inference that they had knowledge of TKRC products and shared this knowledge with Kati Junction is plausible.  Thus the motion to dismiss the claims of trade dress infringement and unfair competition against the employee defendants is DENIED.

### C.    Common Law Trademark Infringement and Unfair Competition

The common law trademark infringement claim against Kati Junction mirrors the Lanham Act claim, which, as noted above, was satisfactorily pleaded. To state a claim for unfair competition under New York common law, the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent. Although bad faith cannot be inferred from the act of copying, the extent of the similarities between TKRC and Kati Junction as well as the proximity of the two restaurants make a claim of bad faith plausible.[78]  The facts alleged in the

---

[77]    *See* Compl. ¶¶ 4, 42.

[78]     *See Streetwise Maps v. Vandam*, 159 F.3d 739, 745 (2d Cir. 1998) ("The intent to compete by imitating the successful features of another's product is

Complaint plausibly allege that Kati Junction copied with the intent to deceive purchasers as to the source of the product.  The motion to dismiss this claim is DENIED.

> **D.      Breach of Duty of Loyalty**

TKRC asserts that the individual employees violated their common law duty by disclosing to a competitor TKRC trade secrets or confidential and proprietary information.  Defendants rely on affidavits to argue that none of the acts alleged in the Complaint took place prior to the individuals leaving their employment at TKRC and each began working at Kati Junction after the restaurant was already open for business.  Again, these affidavits may not be considered in a motion to dismiss and the Court may only consider the facts alleged in the Complaint.

Kati Junction further argues that recipes for kati rolls are not a trade secret because they are generally available in the industry and can be found online. But TKRC does not use generic kati roll recipes and spent time developing the unique flavor profile and even partnered with a celebrity chef to develop a proprietary shrimp-based roll.[79]

---

vastly different from the intent to deceive purchasers as to the source of the product.").

[79]      *See* Compl. ¶¶ 37-38.

Because each of the defendants alleged to have breached the duty of loyalty worked at TKRC prior to Kati Junction, it is a fair inference the defendants are using their proprietary knowledge of TKRC recipes to copy TKRC's menu and compete with TKRC.  Thus, the allegations pleaded in the Complaint support the inference that the employee defendants breached their duty of loyalty and the motion to dismiss this claim is DENIED.

### E.   Breach of Contract Claims Against Md. Tariqul Islam and Shaikh Nuhul Alam

TKRC asserts defendants Islam and Alam breached their signed non-disclosure agreements, presumably by sharing TKRC recipes with Kati Junction. Kati Junction argues the breach of contract claim is indistinguishable from the breach of duty of loyalty claim and should be dismissed because it is duplicative. The two claims are not duplicative, however, because the breach of duty of loyalty claim requires only that the defendants "divert[] business opportunities" while the breach of contract claim specifically alleges that Islam and Alam breached their signed non-disclosure agreements.[80]  The duties included in the non-disclosure agreement are different from and far more extensive than the duty of loyalty.  The non-disclosure agreements forbid activities such as removing materials from the business and explicitly requires employees to keep company secrets beyond the

---

[80]     *Farricker*, 2010 WL 845983, at * 10.

time of their employment.[81]

Plaintiff and defendants argue about the precise date on which Alam left his employment at TKRC and began working for Kati Junction.  Because the contested dates are found in an affidavit, they are irrelevant at this stage.  Although the Complaint fails to allege what information Islam and Alam had access to or shared, the plaintiff relies on the inference that there was no means by which Kati Junction could copy TKRC's flavors unless Islam and Alam shared the recipe.  Because I must draw all plausible inferences in the plaintiff's favor it is fair to assume that Islam and Alam shared TKRC's recipe with Kati Junction.  Accordingly, the motion to dismiss the breach of contract claim against Islam and Alam is DENIED.

### F.   Misappropriation of Trade Secrets and Proprietary or Confidential Information

TKRC alleges that the defendants willfully shared confidential information about TKRC's recipes because, upon information and belief, the flavor profile and texture of Kati Junction's fillings, sauces, and breads are extremely similar to TKRC's.[82]  TKRC claims, again upon information and belief, that Kati

---

[81]   *See* Nondisclosure and Confidentiality of Company Information Form, Ex. 2 to Compl., at 18.

[82]   *See* Compl. ¶ 44.

23

Junction and its employees are using TKRC's proprietary recipes and techniques to copy the TKRC menu.[83]  Thus, TKRC concludes, Kati Junction and John Doe misappropriated TKRC's proprietary recipes and techniques by improperly obtaining trade secret and/or confidential and proprietary information from current and/or former TKRC employees.[84]  Again drawing all plausible inferences in favor of the plaintiff, the motion to dismiss this claim is DENIED.

### G.    Procedural Issues Raised by the Parties

The plaintiff raises issues regarding the defendants' compliance with this Court's pre-motion letter rules and the defendants' briefing.  Defendants respond that their delay in filing some of their motions to dismiss was due to technological difficulties and it does not appear this delay caused any prejudice.

Plaintiff's contention that the defendants failed to brief their motion to dismiss counts three and four against Kati Junction is irrelevant as the motion is denied on other grounds.  Plaintiff also argues that the defendants' moving brief did not address counts six and seven, although this was addressed in defendants' reply memorandum.  Finally, plaintiff notes that count six, breach of duty of loyalty, is only briefed regarding two defendants, Islam and Alam, even though it

---

[83]    *See id*. ¶ 45.

[84]    *See id.* ¶ 46.

was brought against all employee defendants.  Because the Complaint sufficiently alleged each of the employee defendants breached the duty of loyalty the extent to which the defendants briefed this claim is irrelevant.  Thus, none of the procedural issues raised by the plaintiff have a bearing on the outcome of the defendants' motion to dismiss.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is DENIED.  The Clerk of the Court is directed to close this motion (Docket No. 31).  A conference is scheduled for August 15, at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             July 15 , 2014

25

**- Appearances -**

**For Plaintiff:**

Elizabeth Shieldkret, Esq.
67-20 Exeter Street
Forest Hills, NY 11375
(718) 997-0290

**For Defendants:**

Kalpana Nagampalli, Esq.
Feldman Law Group, P.C.
220 E. 42nd Street
New York, NY 10017
(212) 532-8585