UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/25/15
```

————————————————————— X

THE KATIROLL COMPANY, INC.,

           Plaintiff,

  - against -

KATI JUNCTION, INC., JOHN DOE #1,
Md. AKHTER HOSSAIN, Md. JEWEL
HOSSAIN, Md. KAMAL HOSSAIN, Md.
TARIQUL ISLAM, Md. NUR NOBI,
SHAIKH NUHUL ALAM, and NURUN
NABI CHOWDHURY,

           Defendants.

————————————————————— X

**OPINION AND ORDER**

14-cv-1750 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

The KatiRoll Company, Inc. ("KatiRoll") brings this action against Kati Junction, Inc., and eight of its employees (collectively "Kati Junction"). Defendants now move for summary judgment on the plaintiff's Lanham Act and common law claims for infringement of a registered service mark and trade dress infringement, as well as plaintiff's claims for misappropriation of trade secrets and unfair competition. For the reasons that follow, defendants' motion is DENIED.

## II.    BACKGROUND

### A.    Undisputed Facts

KatiRoll is a quick-service restaurant chain with three locations in New York City and one location in London, selling Indian street foods taking the form of meats and vegetables wrapped in a flatbread, which the chain calls "kati rolls."[1]  The first KatiRoll location opened in June 2002.[2]

Each KatiRoll location features a white-on-orange banner outside the restaurant, and utilizes the same white and orange color scheme inside the restaurant and on its napkins and other branded items.[3]  KatiRoll obtained a U.S. Trademark (registration no. 3,352,040) for the service mark "The Kati Roll Company" in December 2007.[4]

In February 2014, Kati Junction opened for business approximately three blocks away from a KatiRoll location.[5]  Kati Junction also sells wraps

---

[1]    *See* Defendants' Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Def. 56.1") ¶¶ 8-9.

[2]    *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Partial Motion for Summary Judgment ("Pl. Opp.") at 2.

[3]    *See* Def. 56.1 ¶¶ 19-20

[4]    *See id.* ¶ 11.

[5]    *See id.* ¶¶ 1, 4.

described as kati rolls.[6]  KatiRoll alleges that Kati Junction's menu matched KatiRoll's in all material respects, selling the same thirteen rolls in the same order.[7] Several of Kati Junction's employees were past KatiRoll employees.[8]  Kati Junction uses an orange/saffron and black color scheme in its restaurant.[9]

**B.    Disputed Facts**

The parties dispute the extent to which KatiRoll's locations conform in design and layout — the defendants assert that each of KatiRoll's locations uses different colors and layouts, while KatiRoll asserts that its four locations look substantially the same.[10]

The parties dispute the extent to which Kati Junction's decor and layout match KatiRoll's.  KatiRoll argues that Kati Junction's color scheme and layout substantially match KatiRoll's; Kati Junction argues that its layout and color

---

[6]      *See id.* ¶ 3.

[7]      *See* Pl. Opp. at 7-8.  Neither party addressed this factual issue in their respective 56.1 statements.

[8]      *See* Def. 56.1 ¶¶ 81-97 (describing responsibilities of various Kati Junction employees while they were employed by KatiRoll).

[9]      *See id.* ¶ 22.

[10]     *Compare* Defendants' Memorandum of Law in Support of Partial Motion for Summary Judgment ("Def. Mem.") at 14-15 *with* Pl. Opp. at 5-6.

usage are dissimilar.[11]

The parties dispute the extent to which the term "kati roll" is generic. Defendants claim the term "kati roll" is a common term describing an Indian street food item; KatiRoll argues that there is no fixed meaning for the term "kati roll" in the United States, and argues that it has the exclusive right to prevent the use of confusingly similar designations to its mark "The Kati Roll Company."[12]

The parties dispute the details of each other's recipes.  The defendants assert that their recipes differ from KatiRoll's recipes, citing affidavits from various Kati Junction employees as evidence.  KatiRoll does not dispute that those employees gave that testimony.[13]

The parties dispute the responsibilities that certain Kati Junction employees had while working at KatiRoll.  KatiRoll asserts that the employees were more substantially involved in preparation of menu items than Kati Junction suggests.[14]

---

[11]    *Compare* Pl. Opp. at 7-8 *with* Def. Mem. at 2-3.

[12]    *See* Plaintiff's Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Pl. 56.1") ¶¶ 10, 16.

[13]    *See id.* ¶¶ 53-79.

[14]    *See id.* ¶¶ 81-97.

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[15] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[16]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [that party] to judgment as a matter of law."[17]  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated

---

[15]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[16]   *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[17]   *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

speculation."[18]

      In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[19] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[20]

## IV.   APPLICABLE LAW

### A.   Lanham Act Claims

#### 1.   Trademark and Trade Dress Infringement

      Pursuant to section 1125(a) of Title 15 of the United States Code, a cause of action for infringement of a registered service mark and a cause of action for trade dress infringement may be brought under the Lanham Act.[21]  Section 43(a) of the Lanham Act provides:

---

[18]    *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

[19]    *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[20]    *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

[21]    *See TrafFix Devices, Inc., v. Marketing Displays, Inc.*, 532 U.S. 23, 28–29 (2001).

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [ ] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person [ ] shall be liable in a civil action by any person who believes he or she is or is likely to be damaged by such act.[22]

### a.  Trademark Infringement

"A claim of trademark infringement, whether brought under [section 32(1)[23] or section 43(a) of the Act], is analyzed under [a] familiar two-prong test . . . ."[24] "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods."[25]

---

[22]    15 U.S.C. § 1125(a)(1)(A).

[23]    Section 32(1) of the Lanham Act governs claims for infringement of a registered trademark, prohibiting the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).

[24]    *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). *Accord Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009).

[25]    *Virgin Enters.*, 335 F.3d at 146.  *Accord Starbucks*, 588 F.3d at 114.

"The first of these questions relates closely to the second, because a trademark's distinctiveness — the key consideration in assessing its protectability — is also a factor in determining the likelihood of confusion."[26]  A mark is to be examined as a "composite" — rather than "as isolated components" — when ascertaining protectability.[27]

Generic marks, which are not entitled to trademark protection, are those "consisting of words that identify the type or species of goods or services to which they apply, [and that] are totally lacking in distinctive quality."[28]  "Aspirin," "automobile," and "shredded wheat," for instance, are generic marks that are not protectable.[29]  Generic marks tend to be nouns that refer to an entire class of products.[30]

---

[26]     *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 161 (2d Cir. 2004).

[27]     *Banff*, 841 F.2d at 489.

[28]      *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001).

[29]     *See Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 117-18 (1938); *Paddington Corp. v. Attiki Import & Distrib., Inc.*, 996 F.2d 577, 583 (2d Cir. 1993); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993); *Banff v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. 1988); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976).

[30]     *See Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689, 703 (S.D.N.Y. 2010) (describing generic marks as words referring to entire classes of products).

A descriptive mark is one that "describes a product or its 'qualities, ingredients or characteristics,'"[31] such as "Tasty" bread.[32]  Descriptive marks tend to be adjectives "identifying the special characteristics of an article."[33]  "The free-market policy considerations compelling the rule that generic marks are unprotectable under trademark law also disfavor protection for descriptive marks."[34]  "Descriptive marks are nonetheless protectable when they acquire 'secondary meaning.'"[35]  Secondary meaning — or "acquired meaning"[36] — "occurs when, 'in the minds of the public, the primary significance of a [mark] is

---

[31]     *Playtex Prods.*, 390 F.3d at 163 (quoting *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1509 (2d Cir. 1997)).

[32]     *Wal-mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 213 (2000).

[33]     *Merritt Forbes & Co.*, 604 F. Supp. at 954.

[34]     *Playtex Prods.*, 390 F.3d at 163.

[35]     *Id.*

[36]     *See Wal-mart Stores*, 529 U.S. at 211 at n* ("The phrase 'secondary meaning' originally arose in the context of word marks, where it served to distinguish the source-identifying meaning from the ordinary, or 'primary,' meaning of the word.  'Secondary meaning' has since come to refer to the acquired, source-identifying meaning of a nonword mark as well.  It is often a misnomer in that context, since nonword marks ordinarily have no 'primary' meaning.  Clarity might well be served by using the term 'acquired meaning' in both the word-mark and the nonword-mark contexts . . . .").

to identify the source of the product rather than the product itself.'"[37]  "When there is widespread recognition of a mark among consumers, there is an increased likelihood that 'consumers will assume it identifies the previously familiar user,' and therefore an 'increas[ed] . . . likelihood of consumer confusion if the new user is in fact not related to the first.'"[38]

"To support a finding of infringement, there must [also] be a 'probability of confusion, not a mere possibility.'"[39]  "The central consideration in assessing a mark's protectability, namely its degree of distinctiveness, is also a factor in determining likelihood of confusion."[40]

In determining whether there is a likelihood of confusion, courts within the Second Circuit apply the eight-factor balancing test set forth in *Polaroid Corporation v. Polarad Electronics Corporation*.[41]  The *Polaroid* factors are:  (1)

---

[37]   *Id.* (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 851 n.11 (1982)) (alteration in original).  *Accord Playtex Prods.*, 390 F.3d at 163; *Brennan's, Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 131 (2d Cir. 2004).

[38]   *Playtex Prods.*, 390 F.3d at 163 (quoting *Virgin*, 335 F.3d at 148) (alteration in original).

[39]   *Id.* at 161 (quoting *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001)).

[40]   *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).

[41]   *See* 287 F.2d 492, 495 (2d Cir. 1961); *see also Starbucks*, 588 F.3d at 115.

the strength of plaintiff's mark; (2) the similarity of plaintiff's and defendant's

marks; (3) the proximity of the products; (4) the likelihood that plaintiff will

"bridge the gap"; (5) actual confusion between products; (6) defendant's good or

bad faith in adopting the mark; (7) the quality of defendant's product; and (8) the

sophistication of the buyers.[42]

Of these factors, the strength of the plaintiff's mark, the similarity of

plaintiff's and defendant's marks, actual confusion, and defendant's bad faith are

more probative of likelihood of confusion than the other factors.[43]  Nevertheless,

"application of the *Polaroid* test is 'not mechanical, but rather, focuses on the

ultimate question of whether, looking at the products in their totality, consumers

are likely to be confused.'"[44]  "No single factor is dispositive, nor is a court limited

to consideration of only these factors."[45]  "Further, 'each factor must be evaluated

in the context of how it bears on the ultimate question of likelihood of confusion as

---

[42]     *See Polaroid*, 287 F.2d at 495; *see also Starbucks*, 588 F.3d at 115.

[43]     *See Playtex Prods.*, 390 F.3d at 167 n.5 (discussing *Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996)).

[44]     *Starbucks*, 588 F.3d at 115 (quoting *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005)).

[45]     *Brennan's, Inc.*, 360 F.3d at 130.

-11-

to the source of the product.'"[46]

"If a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment."[47]  As such, summary judgment should only be granted "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely."[48]

### b.    Trade Dress Infringement

In *Two Pesos v. Taco Cabana*, the Supreme Court held that "[t]rade dress is the total image of the business" and "may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniforms and other features reflecting the total image of the restaurant."[49] The purpose of trade dress protection is to "secure to the owner of the [trade dress]

---

[46]     *Id.* (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986)).

[47]     *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996).  *Accord Patsy's Brand, Inc. v. I.O.B. Realty Inc.*, 317 F.3d 209, 215-16 (2d Cir. 2003).

[48]     *Cadbury Beverages*, 73 F.3d at 478.

[49]     505 U.S. 763, 764 n.1 (1992).

-12-

the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."[50]

A plaintiff must prove "that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's goods and the defendant's."[51] "A plaintiff must also offer a precise expression of the character and scope of the claimed trade dress,"[52] and articulate the "elements of . . . design with specificity to be afforded trade dress protection."[53]

The Second Circuit cautions that in analyzing trade dress claims, "courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin."[54]  Trade dress "analysis requires courts to balance the policy of protecting consumers from confusion against that in favor of free

---

[50]     *Id.* at 774 (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985)).

[51]     *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. App'x 389, 391 (2d Cir. 2003) (citation omitted).

[52]     *Id.* (quotation marks and citation omitted).

[53]     *Shevy Custom Wigs, Inc. v. Aggie Wigs.*, No. 06 Civ. 1657, 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006).

[54]     *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 375 (2d Cir. 1997).

competition."[55]

In assessing the likelihood of customer confusion "[t]he Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another."[56]  Thus, "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally."[57]

### 2.    Unfair Competition

At its core, an unfair competition claim under the Lanham Act examines "whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff."[58] The Lanham Act prohibits any misrepresentation likely to cause confusion about the source of a product, in particular the use by any person of "any . . . name . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association . . . with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another

---

[55]    *Id.* at 377, 380.

[56]    *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 582 (2d Cir. 1991) (quotation marks omitted).

[57]    *Id.* (quoting Restatement (First) of Torts § 20 (1934) reporter's note at 179).

[58]    *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981) (citations and quotation marks omitted).

person."[59]

## B.     Common Law Claims

### 1.     Trademark Infringement

"'It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims.'"[60]

### 2.     Unfair Competition

The essence of the tort of unfair competition under New York common law is the bad-faith misappropriation, for the commercial advantage of

---

[59]     *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 Civ. 4187, 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013) (quoting 15 U.S.C. § 1125(a)) ("[T]he standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)."). *Accord Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002); *Estate of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("A party establishes liability under [15 U.S.C. § 1125(a)] if it can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion.") (citations and quotation marks omitted).

[60]     *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 Civ. 4204, 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013) (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005)). *Accord Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982) ("The heart of a successful claim based upon [both] . . . the Lanham Act . . . and [the] common law [causes of action] . . . is the showing of a likelihood of confusion as to the source or sponsorship of defendant's products.").

one person, of "'a benefit or 'property' right belonging to another [person].'"[61]  As noted above, the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law "mirror the Lanham Act claims."[62]  However, unlike its federal counterpart, a viable common law claim for unfair competition requires an additional showing of bad faith.[63] "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will [sic] and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."[64]

---

[61]  *Volmar Distribs. v. New York Post Co.*, 899 F. Supp. 1187, 1197 (S.D.N.Y. 1995) (quoting *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Co.*, 101 N.Y.S.2d 483, 489 (Sup. Ct. N.Y. Co. 1950), *aff'd*, 107 N.Y.S.2d 795 (1st Dep't 1951) (quotations omitted).  *Accord Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) (noting that the essence of New York's unfair competition law "is that the defendant has misappropriated the labors and expenditure of another").

[62]  *Allied Interstate*, 2013 WL 4245987, at *5.  *Accord Standard & Poor's*, 683 F.2d at 708.

[63]  *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000) ("To determine that misappropriation has occurred, bad faith must be found . . . .") (citations omitted); *see also Saratoga Vichy Spring*, 625 F.2d at 1037 (noting that central to the "notion" of unfair competition under New York law is "some element of bad faith").

[64]  *Star Indus.*, 412 F.3d at 388.

-16-

### C.    Misappropriation of Trade Secret and/or Proprietary and Confidential Information

New York's unfair competition law recognizes a cause of action for misappropriation — "taking the skill, expenditures and labors of a competitor, and misappropriati(ng) for the commercial advantage of one person . . . a benefit or property right belonging to another."[65]  The tort of misappropriation is "adaptable and capacious," and has been held to encompass "any form of commercial immorality," of "endeavoring to reap where one has not sown."[66]  As an unfair competition claim, misappropriation requires a showing of bad faith.[67]

To state a claim for misappropriation of trade secrets under New York law, a plaintiff must demonstrate "'(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'"[68]  A trade secret is "'any formula, pattern, device or compilation of information which is used

---

[65]    *Roy Exp. Co. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (citations and quotation marks omitted) (alteration in original).

[66]    *Id.*

[67]    *See Ritani, LLC v. Aghjayan*, No. 11 Civ. 8928, 2013 WL 4856160, at *22 (S.D.N.Y. Sept. 9, 2013).

[68]    *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quoting *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)).

in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'"[69]

## V.   DISCUSSION

### A.   Infringement of a Registered Service Mark

Defendants move for summary judgment as to KatiRoll's claims for infringement of a registered service mark, arguing both that the mark is too generic to be defensible and that even if the mark is not generic, there can be no customer confusion.  Therefore, defendants argue, there can be no infringement as a matter of law.

Plaintiff's service mark, "The Kati Roll Company," is not generic. KatiRoll has not attempted to trademark the term "kati roll" itself.  While the defendants may ask the Court to separate these two words from the complete mark for the purpose of analyzing the mark's validity, to do so would inappropriately dissect the mark.  KatiRoll's service mark describes the full panoply of its restaurant's services, not simply the generic "kati roll" food product.  I agree with the analysis of the court in *The KatiRoll Co. v. Kati Roll & Platters, Inc.*, where when discussing the nature of the mark, that court stated:

---

[69]   *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b, at 5 (1939)).

The meaning of the term "kati roll" is relevant to the validity of the mark, but that term does not displace the mark as a whole. The name "The Kati Roll Company" functions to identify a particular source of restaurant services for consumers, and thus has acquired secondary meaning.  The PTO [Patent and Trademark Office] found that this was true in registering the mark, and the Defendants do not present any conflicting evidence that is relevant to this determination.**[70]**

Even if the mark has acquired secondary meaning, and is therefore defensible as a descriptive mark, the plaintiff must show that the alleged infringement is likely to cause confusion.  A full review of the eight non-exhaustive *Polaroid* factors is unnecessary here, as there are genuine issues of material fact as to the majority (including the most probative factors — the strength of KatiRoll's mark, the similarity between KatiRoll and Kati Junction's marks, and evidence of actual confusion).  Summary judgment is appropriate only "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely."[71]  Because a reasonable fact finder could find in favor of either party, summary judgment is inappropriate.

**B.     Infringement of Trade Dress**

Defendants argue that KatiRoll cannot prove that it possesses a distinctive trade dress, or that the trade dress is non-functional, or that Kati

---

[70]     No. 10–cv–3620, 2012 WL 3061152, at *7 (D.N.J. July 26, 2012).

[71]     *Cadbury Beverages*, 73 F.3d at 478.

Junction's use of that trade dress would be likely to cause confusion.  However, when viewing the record in the light most favorable to KatiRoll as the non-moving party, I conclude that a reasonable fact finder could determine that, taken together, the specific components KatiRoll lists in its opposition to this motion (the store banner, the unified color scheme, the decorative elements, and the open kitchen layout, among others) are a distinctive, non-functional trade dress.

The parties have presented competing accounts of the consistency of KatiRoll's use of its alleged trade dress in its locations, competing accounts of Kati Junction's use of the same (or close to the same) trade dress, and competing accounts of actual confusion by consumers.  A fact finder, not this Court, must sort through these competing accounts and decide which is true, and whether KatiRoll has a protectable trade dress and whether that trade dress has been infringed upon. Summary judgment is denied.

### C.    Unfair Competition

There are genuine issues of material fact as to whether Kati Junction infringed on KatiRoll's service mark and trade dress, as described above.  These disputes also affect plaintiff's Lanham Act claim for unfair competition.  A reasonable fact finder could determine that Kati Junction used the term "kati roll" and elements of KatiRoll's alleged trade dress in such a way as to suggest that the

products originated with KatiRoll, were approved by KatiRoll, or were otherwise associated with KatiRoll, causing confusion sufficient to demonstrate unfair competition. Summary judgment on the Lanham Act unfair competition claim is therefore denied.

Neither party discusses New York's additional bad faith requirement beyond asserting (without substantiation) either that the facts make clear that Kati Junction acted in good faith or that the facts make clear that Kati Junction acted in bad faith.  However, the facts in dispute demonstrate that a reasonable fact finder could determine that Kati Junction entered into business with the bad faith intent to trade on KatiRoll's good will through copying its service mark, trade dress, and menu, and therefore could find that Kati Junction committed the tort of unfair competition under New York common law.  Summary judgment on the state common law claim of unfair competition is therefore denied.

### D.    Misappropriation of Trade Secrets

Defendants argue that KatiRoll cannot prove that its recipes are trade secrets, because the recipes are general and incomplete.  It is undisputed that the recipes held out by KatiRoll as trade secrets consist of lists of ingredients and their proportions, without further instructions on preparation.  Defendants claim this is too vague to qualify as a "formula, pattern, device or compilation of information"

capable of "giv[ing] . . . an opportunity to obtain an advantage over competitors who do not know or use it."[72]  It is also undisputed that recipes for versions of many of the items prepared by KatiRoll are publicly available.  Defendants claim that because one can find recipes for items such as paneer and parathas on the Internet, the specific ingredients and proportions used by KatiRoll are "matters of general knowledge" which cannot achieve the status of a trade secret as a matter of law.[73]

Defendants' position conflates production methods with production inputs.  If KatiRoll were arguing that the general recipes for its various foods were protected trade secrets, KatiRoll would surely fail — as those general recipes are readily available online.  However, KatiRoll argues that its lists of specific ingredients and proportions for its menu items, not the generally known preparation methods of those menu items, are the trade secrets.  Neither party argues or admits that the ingredient and proportions used by KatiRoll are publicly available.[74]  Defendants only argue that certain preparation methods (for example,

---

[72]     *Softel, Inc.*, 118 F.3d at 968.

[73]     *Speedry Chem. Prods., Inc., v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir. 1962).

[74]     Nor has this Court been able to identify publicly available recipes matching either KatiRoll or Kati Junction's recipes from its own independent research.  My chambers conducted a search of websites containing recipes for

marinating meat before grilling) and individual ingredients (for example, the

ingredients in KatiRoll's mixed vegetable roll) are publicly available or otherwise

common in Indian cooking.  This does not address the uniqueness of the specific

ingredient and proportion lists provided by KatiRoll, which may well be unique

trade secrets.  In fact, it is possible for mere *proportions* to be trade secrets — even

if the entire ingredient list is in the public domain.[75]

It is possible that the reason KatiRoll's recipes are simply lists of

ingredients and proportions is because the process used to prepare a particular

menu item is generally known, but the precise ingredients and proportions used

are the heart of the secret.  It is also possible that the ingredients and their

---

various dishes prepared by both parties, searching for recipes that precisely
matched the recipes testified to by the plaintiff and provided by the defendants.
While many similar recipes were found, my chambers found nothing
demonstrating that the exact ingredients and proportions of KatiRoll or Kati
Junction's recipes are publicly available.  Rule 201 of the Federal Rules of
Evidence supports District Judges' use of Internet searches to confirm their
common sense suppositions.  *See United States v. Bari*, 599 F.3d 176, 181 (2d Cir.
2010).  Surely, if a recipe were available in the public domain, it would be readily
available through an Internet search such as that performed by my chambers.  That
said, I am not deeming this Internet research to be conclusive, nor exhaustive.
Instead, I am using it "only to underscore the existence of a genuine dispute of
material fact."  *Rowe v. Gibson*, No. 14–3316, 2015 WL 4934970, at *7 (7th Cir.
Aug. 19, 2015) (Posner, J.).

[75]     *See American Can Co. v. Mansukhani*, 742 F.2d 314, 329 (7th Cir.
1984) (holding that an ink formula consisting of new proportions of publicly
disclosed ingredients qualified as a trade secret).

proportions are not unique at all; however, the defendants have not pointed to any such evidence in the record.  This is a genuine issue of material fact that cannot be decided on summary judgment.

Defendants also argue that even if a trade secret exists, KatiRoll cannot demonstrate that any of the defendants either knew KatiRoll's recipes or used KatiRoll's recipes in developing Kati Junction's menu.  KatiRoll disputes the testimonies of the individual defendants that support this argument, claiming the employees are minimizing their job responsibilities while at KatiRoll and were privy to KatiRoll's recipes.  This dispute creates a credibility contest between KatiRoll and Kati Junction.  The task of resolving the credibility issues falls to the fact finder.  Summary judgment on these claims must be denied.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment

is DENIED. The Clerk of the Court is directed to close this motion (Dkt. No. 71).

A conference is scheduled for October 1, 2015 at 11:30 AM.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 25, 2015

-25-

## - Appearances -

**For Plaintiff:**

Elizabeth Shieldkret, Esq.
67-20 Exeter Street
Forest Hills, NY 11375
(718) 997-0290

**For Defendants:**

Kalpana Nagampalli, Esq.
Feldman Law Group, P.C.
220 E. 42nd Street
New York, NY 10017
(212) 532-8585